ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| DORADO 2011 LLC representado por CARLOS PERDOMO; DORADO 2013 LLC, representado por CARLOS PERDOMO<br><br>Recurrentes<br><br>v.<br><br>CONSEJO DE TITULARES Y/O JUNTA DE DIRECTORES COND. VILLA DORADO RESORT CONDOMINIUM<br><br>Recurridos | KLRA202400669 | *Revisión Administrativa* procedente del Departamento de Asuntos del Consumidor<br><br>Caso Núm. C-SAN-2022-0010773<br><br>Sobre: Condominios |

Panel integrado por su presidenta, la Juez Aldebol Mora, la Jueza Boria Vizcarrondo y el Juez Sánchez Báez[1]

Sánchez Báez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de junio de 2026.

Compareció la parte recurrente, Dorado 2011 LLC y Dorado 2013 LLC (en adelante, "Dorado LLC" o "parte querellante-recurrente"), mediante un recurso de *Revisión Judicial.* Nos solicitó la revisión de la *Resolución Sumaria* emitida el 30 de septiembre de 2024, por el Departamento de Asuntos del Consumidor (en adelante, "DACO"). Mediante el referido dictamen, el organismo administrativo denegó la querella presentada por la parte recurrente en contra del Consejo de Titulares del Villa Dorado Resort Condominium y su Junta de Directores (en adelante, "Consejo de Titulares", "Junta de Directores" o "parte querellada-recurrida").

---

[1] Mediante la Orden Administrativa OATA-2025-002 emitida el 9 de enero de 2025 se designó al Juez Isaías Sánchez Báez en sustitución de la Jueza Laura I. Ortiz Flores.

Por los fundamentos que expondremos a continuación, **se modifica** la *Resolución Sumaria* recurrida.

**-I-**

El caso de epígrafe tuvo su génesis el 14 de febrero de 2022, cuando Dorado LLC, por conducto de su representante, el Sr. Carlos M. Perdomo, presentó una *Querella* ante el DACO contra el Consejo de Titulares del Villa Dorado Resort Condominium y su Junta de Directores.[2] En síntesis, alegó que adquirió las unidades 1-A y 1-B del referido Condominio mediante escrituras otorgadas el 4 y el 24 de febrero de 2020, y que posteriormente sometió a la consideración de la Junta de Directores la documentación requerida para realizar determinadas modificaciones en ambas unidades, las cuales fueron aprobadas. No obstante, sostuvo que, luego de iniciadas las obras, la Junta de Directores le requirió información adicional relacionada con los cristales instalados en las ventanas por entender que estos producían un efecto óptico que no había sido evaluado por el Consejo de Titulares ni por el Comité de Arquitectura. Posteriormente, el 15 de enero de 2022, el Consejo de Titulares celebró una Asamblea Extraordinaria en la que determinó que dichos cristales alteraban la fachada del edificio.

Sin embargo, Dorado LLC alegó que la referida asamblea se celebró en contravención al Artículo 51 de la Ley Núm. 129-2020, según enmendada, conocida como la Ley de Condominios de Puerto Rico, 31 LPRA sec. 1922w, y que la determinación adoptada por el Consejo de Titulares y la Junta de Directores fue arbitraria, caprichosa y contraria a sus propios actos, toda vez que las modificaciones habían sido previamente aprobadas. A su vez, planteó que en el Condominio no existía uniformidad en la tonalidad de los cristales instalados en otras unidades y que había invertido

---

[2] Apéndice de la parte recurrente, págs. 1-20.

aproximadamente doscientos mil dólares ($200,000.00) en las mejoras realizadas a ambas propiedades. Por ello, argumentó que, de determinarse que los cristales debían ser sustituidos, el costo correspondiente debía ser asumido por el Consejo de Titulares y la Junta de Directores. En consecuencia, solicitó, entre otros remedios, que se declararan nulas las votaciones adoptadas en la Asamblea Extraordinaria del 15 de enero de 2022 y que se determinara que el Consejo de Titulares y la Junta de Directores estaban impedidos, por sus propios actos, de ordenar la sustitución de las ventanas instaladas.

Luego de varios trámites, el 29 de abril de 2022, la Junta de Directores del Condominio en cuestión, presentó su *Contestación a Querella*.[3] Allí negó las alegaciones formuladas en su contra y sostuvo que la aprobación inicialmente otorgada por el Comité de Arquitectura y la Junta de Directores se fundamentó en la propuesta sometida por Dorado LLC, la cual representaba que las modificaciones proyectadas preservarían las características arquitectónicas originales del complejo. Argumentó que el Sr. Perdomo conocía las *Villa Dorado Resort Condominium Association Guidelines for Renovation and Construction Policy* (en adelante, "Guías de Construcción y Remodelación") aplicables a los proyectos dentro del Condominio y se había comprometido a cumplirlas y a hacerlas extensivas a los profesionales encargados de las obras.

En cuanto a la controversia relacionada con los cristales instalados en las ventanas, expresó que había requerido información adicional debido a preocupaciones relacionadas con su apariencia y el efecto visual que producían en la fachada del inmueble. Añadió que, mientras se evaluaba la situación, le solicitó a Dorado LLC abstenerse de continuar con la instalación de las

---

[3] *Íd.*, págs. 34-61.

ventanas objeto de controversia, por lo que cualquier gasto adicional realizado con posterioridad obedeció exclusivamente a determinaciones de la propia querellante. Además, sostuvo que aun cuando se invalidaran los votos impugnados en la Asamblea Extraordinaria del 15 de enero de 2022, ello no alteraría el resultado alcanzado por el Consejo de Titulares, toda vez que la determinación relacionada con los cristales fue aprobada por mayoría. A tenor, solicitó la desestimación de la querella.

Así las cosas, el 2 de mayo de 2022, la parte querellante-recurrente instó ante el DACO una *Urgente Solicitud de Cese y Desista o Paralización de asuntos relacionados a la Querella de epígrafe a discutirse en la Asamblea Anual del Condominio Villa Dorado Resort Condominium.*[4] Mediante esta, expresó que el Consejo de Titulares había convocado una Asamblea Anual Ordinaria para celebrarse el 4 de mayo de 2022 y que, entre los asuntos incluidos en la agenda, figuraba la consideración de las medidas correctivas relacionadas con los cristales instalados en las ventanas de sus propiedades. Según alegó, dicho asunto formaba parte de las controversias planteadas en la *Querella* pendiente ante el DACO, por lo que solicitó la paralización de la referida asamblea.

Por su parte, el 3 de mayo de 2022, la parte querellada-recurrida incoó una *Oposición a Urgente Solicitud de Cese y Desista.*[5] En síntesis, sostuvo que la solicitud presentada por la parte querellante-recurrente era prematura y descansaba sobre planteamientos especulativos relacionados con determinaciones que aún no habían sido adoptadas por el Consejo de Titulares. Asimismo, argumentó que la Ley Núm. 129-2020, *supra*, le impone al Consejo de Titulares el deber de velar por la conservación de la

---

[4] *Íd.*, págs. 98-128.
[5] *Íd.*, págs. 129-134.

fachada del inmueble sometido al régimen de propiedad horizontal y le reconoce la facultad de evaluar y adoptar las medidas correctivas que estime pertinentes ante alteraciones no autorizadas. Añadió que el asunto relacionado con las ventanas constituía solo uno (1) de los diecisiete (17) temas incluidos en la agenda de la Asamblea Anual Ordinaria convocada. Por ello, solicitó que el DACO declarara no ha lugar la urgente solicitud presentada por la parte querellante-recurrente.

Según surge del expediente ante nuestra consideración, la Asamblea Anual Ordinaria se celebró en la fecha antes mencionada, entiéndase el 4 de mayo de 2022.[6] En lo pertinente, el Consejo de Titulares reafirmó su determinación de que los cristales instalados por la parte querellante-recurrente constituían una alteración no autorizada de la fachada del Condominio. En consecuencia, mediante voto mayoritario, aprobó requerirle que, dentro de un término de treinta (30) días, acreditara haber ordenado el reemplazo de los cristales por otros que cumplieran con los parámetros establecidos en las Guías de Construcción y Remodelación. Una vez verificada dicha orden de compra y corroborado que los nuevos cristales serían tipo "clear", se le concedería un término de doce (12) meses para completar su sustitución.

Inconforme con la determinación adoptada por el Consejo de Titulares en la Asamblea Anual Ordinaria, el 3 de junio de 2022, la parte querellante-recurrente radicó ante el DACO una *Querella Enmendada*.[7] Mediante esta, impugnó el acuerdo relacionado con las medidas correctivas aprobadas respecto a los cristales instalados en sus unidades y solicitó la acumulación de treinta (30) titulares adicionales del Condominio. Según alegó, dichos titulares también

---

[6] *Íd.*, págs. 177-182.
[7] *Íd.*, págs. 185-193.

habían incurrido en alteraciones a la fachada del inmueble, por lo que constituían partes indispensables para la adecuada adjudicación de la controversia.

En riposta, el 13 de junio de 2022, la parte querellada-recurrida presentó su *Oposición a Solicitud de Enmienda a Querella*.[8] Allí argumentó que los treinta (30) titulares cuya acumulación procuraba la parte querellante-recurrente no podían ser considerados partes indispensables, toda vez que cualquier determinación que emitiera el DACO respecto a los cristales instalados en las unidades de la parte querellante-recurrente no afectaría sus derechos ni intereses. Añadió que, conforme al Reglamento Núm. 9380 del 11 de mayo de 2022, las controversias entre titulares quedaban excluidas de la jurisdicción del DACO. Finalmente, reiteró que correspondía a la Junta de Directores y al Consejo de Titulares atender y notificar a la comunidad los asuntos relacionados con el cumplimiento de las Guías de Construcción y Remodelación. Por ello, solicitó que se denegara la solicitud de enmienda.

Luego de varios trámites procesales, el 14 de julio de 2022, el DACO celebró una vista administrativa en la que las partes expusieron sus respectivas posturas respecto a la solicitud de enmienda a la querella. Tras escuchar los planteamientos, el organismo administrativo autorizó la enmienda a la querella únicamente en cuanto a la impugnación del acuerdo de acción correctiva adoptado por el Consejo de Titulares en la Asamblea Anual Ordinaria, mas no así respecto a la acumulación de los treinta (30) titulares propuesta por la parte querellante-recurrente.

---

[8] *Íd.*, págs. 199-210.

Posteriormente, el 22 de agosto de 2022, la parte querellante-recurrente presentó su *Contestación a Causa de Acción Autorizada de la Querella Enmendada.*[9] En esta, reiteró que el Consejo de Titulares y su Junta de Directores ejerció sus deberes y facultades delegadas por la Ley Núm. 129-2020, *supra,* alegó que aplicó y procuró el cumplimiento con las *Guidelines for Renovation and Construction* (en adelante, "Guías de Construcción y Remodelación").

Evaluados los planteamientos de las partes y el expediente administrativo ante su consideración, el 30 de septiembre de 2024, el DACO emitió y notificó la *Resolución Sumaria* recurrida. En el referido dictamen, concluyó que no existía controversia real sobre hechos materiales y consignó las siguientes determinaciones de hecho que, a su entender, no estaban en controversia:

1. La parte querellante Dorado 2011, LIC es titular del apartamento 1-A mediante Escritura de Compraventa otorgada el 4 de febrero de 2020 y Dorado 2013, LLC, es titular del apartamento 1-B del Condominio Villa Dorado Resort Condominium mediante Escritura de Compraventa otorgada el 24 de febrero de 2020, ambas ante el notario Francisco José García García (en adelante Villas 2011 y 2013).

2. El Condominio Villa Dorado Resort Condominium se encuentra sometido al régimen de propiedad horizontal.

3. El 16 de abril de 2020, la parte querellante sometió a la Junta de Directores una breve descripción ("Project Summary") de lo que sería la remodelación de ambos apartamentos. La carta está suscrita por el arquitecto contratado por la parte querellante.

4. Surge de la referida comunicación que se propone cumplir con las guías establecidas por Villa Dorado Resort Condominium. En específico indica "The exterior design approach and strategy proposed follows the VDRCA guidelines in the following manner: *The Patios on the South Elevations are maintained as much as possible; *The original architectural features and style of overhangs and columns on the south faced are maintained; *All aluminum framed windows and sliding doors are proposed to match original sizes, rhythm and existing anodized grey finish (RAL 9006); *The wood framed fences are proposed to match existing style and color; *The main front door will be restored and re-used.".

5. En la misma fecha en que el arquitecto remitió la comunicación, el querellante recibió una copia de las guías para la construcción y remodelación de los apartamentos del Condominio Villa Dorado Resort Condominium ("Villa Dorado Resort Condominium Association Guidelines for Renovation and Construction Policy").

---

[9] *Íd.,* págs. 277-286.

6. Las guías claramente establecen que, al reemplazarse las ventanas, estas deberán mantener el mismo color del cristal que el ya existente. En específico dispone "Other design and construction requirements and considerations: Sliding Glass Doors/Screens/Windows: Sliding glass doors, screens and windows are the responsibility of each Villa OWNER. All replacement must match the finish, color of the glass and its frame and be approved by the Board of Directors. Drawings and specifications must be submitted prior to any construction work. A power coated paint in a grey/silver color (RAL 9006) is available from local manufacturers. No substitutions or alterations of a different size or color or finish are allowed. If replacement doors and windows do not meet the approved specifications, VILLA OWNER will be responsible to replace al VILLA OWNER'S cost. Our Property of approved manufacturers. Manager WINDOWS: Extreme care should be taken to maintain the same window types and sizes as the original design; maintain the same frame thickness and finishes including the glass transparency of original windows. New windows need to have a minimum-shading coeficient of 0.40 as per the most recent PR Building Code.".

7. El 16 de abril de 2020, la parte querellante sometió para la consideración de la Junta de Directores una solicitud para la aprobación de la remodelación de ambas villas. En la referida carta, el representante de la corporación titular de ambas villas, Carlos Perdomo, certifica que se familiarizó con los requisitos para el diseño requerido, según preparados por la Junta de Directores.

8. El 30 de agosto de 2020, el Comité de Arquitectura de Villa Dorado Resort Condominium envió a la parte querellante una carta mediante la cual se le informa que aprobaron las remodelaciones propuestas.

9. El 8 de octubre de 2021, el representante legal de la parte querellada envió una carta al representante corporativo de la parte querellante, solicitándole a nombre de la Junta de Directores que sometiera la orden de compra de las ventanas a instalarse toda vez que habían apreciado que los cristales de las ventanas eran reflectivos, convirtiéndolos en un cambio de fachada.

10. Toda vez que el cristal de las ventanas a instalarse no cumplía con lo dispuesto en las guías de construcción y remodelación, se le solicitó a la parte querellante que, hasta tanto entregase la documentación solicitada, detuviese la instalación de las ventanas y que no contaba con la autorización de la parte querellada.

11. El 27 de octubre de 2021, el representante legal de la parte querellada cursó una carta dirigida a que la parte querellante entregase toda la información solicitada referente a las ventanas instaladas.

12. El 15 de enero de 2022, el Consejo de Titulares del Condominio Villa Dorado Resort Condominium se reunió en Asamblea Extraordinaria para discutir, entre otros asuntos, la instalación de las ventanas en las Villas 2011 y 2014 y la fachada del condominio.

13. En votación mayoritaria, el Consejo de Titulares determinó que los cristales de las ventanas a instalarse en las villas pertenecientes a la parte querellante no cumplían con las guías de uniformidad.

14. La parte querellante presenta la querellante de epígrafe el 14 de febrero de 2022, impugnando la asamblea celebrada el 15 de enero de 2022, alegando una serie de irregularidades con las diferentes representaciones de titulares de varios apartamentos.

15. La parte querellada contestó la querella el 29 de abril de 2022.

16. El 2 de mayo de 2022, la parte querellante presentó una Urgente Solicitud de Cese y Desista o Paralización de Asuntos Relacionados a la Querella de Epígrafe a Discutirse en la Asamblea Anual del Condominio Villa Dorado Resort Condominium, mediante la cual solicitaba que este foro detuviese la asamblea ordinaria convocada para el 4 de mayo de 2022 y donde se traería al Consejo de Titulares las medidas correctivas a adoptarse en relación a los cristales de las ventanas de las villas objeto de la presente querella.

17. Este Departamento citó a las partes a una vista administrativa a celebrarse mediante videoconferencia el 24 de junio de 2022. El 3 de junio de 2022, la parte querellante presentó una Querella Enmendada. A solicitud de la parte querellada, la vista fue transferida para el 14 de julio de 2022.

18. El 13 de junio de 2022, la parte querellada presentó una Oposición a solicitud de Enmienda a querella.

19. En apretada síntesis, mediante la enmienda de 3 de junio de 2022 la parte querellante impugna la asamblea celebrada el 4 de mayo de 2022 y solicita se incluyan como parte inmueble. con interés a treinta (30) titulares alegando que sus unidades violan la fachada del inmueble.

20. En la referida asamblea de 4 de mayo de 2022, el Consejo de Titulares ratificó la decisión de la Junta de Directores de requerirle a la parte querellante que sometiera en un término de treinta días confirmación de que se hizo una orden de compra para sustituir los cristales de las ventanas por unos "clear", conforme a las guías de diseño arquitectónico, luego de lo cual tendrían un término de doce meses para completar el reemplazo. El único voto en contra fue el representante de la parte querellante.

21. El día de la vista administrativa se permitió únicamente la enmienda relacionada a la impugnación de asamblea, mas no así la inclusión de los treinta titulares que según el querellante se encontraban en violación de la fachada. Además, se apercibió a las partes que la controversia sobre la validez de las guías adoptadas por la parte querellada era cosa juzgada a base de la querella C-SAN-2017-0001377.

22. El 29 de julio de 2022, la parte querellante solicitó la Reconsideración a la determinación emitida en la vista administrativa de permitir únicamente que se entregase a la parte querellante los planos originales del inmueble, mas no así las minutas del Consejo de Titulares que reflejen la forma en que se votó para la adopción de las guías de construcción, así como nuestra determinación de que la validez de estas era cosa juzgada.

23. El 22 de agosto de 2022 la parte querellada presentó una Oposición a Solicitud de Reconsideración y una Oposición a Solicitud de Orden Para la Producción del Plano del Condominio. La parte querellada informó no tener los planos originales, no obstante estaba realizando los tramites en el Registro de la Propiedad para confirmar existencia y disponibilidad de estos.

24. El 1 de octubre de 2022, luego de la celebración de la vista administrativa y de que este foro determinase no autorizar la enmienda a la querella a los efectos de incluir treinta titulares como partes con interés, la parte querellante sin autorización de este foro presentó una moción intitulada "Querella".

25. La referida "querella", presentada bajo el número de la querella ante nos, incluía nuevas alegaciones referentes a violaciones de fachada en las que han incurrido treinta titulares.

26. La Escritura Matriz del Condominio Villa Dorado Resort Condominium dispone que ningún titular podrá alterar o construir en los elementos comunes generales o limitados,

sin la autorización expresa de la Junta de Directores. ("Nothing shall be altered or constructed in, or removed from the General or Limited Common Elements, except upon the written consent of the Grantor and the Board of Directors.").

27. También dispone la Escritura Matriz que no se violarán las reglas para el uso de los elementos comunes generales o limitados que queden establecidas en los reglamentos que la Junta de Directores está autorizada a adoptar. ("There shall be no violation of rules for the use of the General Common Elements or Limited Common Elements, adopted by the Board of Directors and furnished in writing to the Owners and the Board of Directors is authorized to adopt such rules.").

28. El Reglamento del Condominio Villa Dorado Resort Condominium dispone, en el acápite "X" lo referente a la regulación que puede adoptar la Junta de Directores. "The Board of Directors shall have the right to adopt and amend Rules and Regulations governing the details of the operation and use of the General and Limited Common Elements and restrictions on and requirements respecting the use and maintenance of units as authorized by the Puerto Rico Horizontal Property Act and Master Deed. Copies of any Rules and Regulations shall be furnished to each Owner prior to the time the same shall become effective."

29. Las guías de construcción y renovación (Villa Dorado Resort Condominium Association Guidelines for Renovation and Construction Policy), han sido adoptadas conforme a la Escritura Matriz y al Reglamento del Condominio Villa Dorado Resort Condominium, por lo que son legales, no nulas.

30. Se toma conocimiento oficial de la querella C-SAN-2017-0001377, resuelta por este foro el 29 de noviembre de 2018 y la subsecuente revisión administrativa, KLRA201800765, resuelta por el Tribunal de Apelaciones el 20 de junio de 2019.

A base de las anteriores determinaciones de hecho, el DACO concluyó que las Guías de Construcción y Remodelación en cuestión fueron válidamente adoptadas por la Junta de Directores al amparo de las facultades conferidas por la Escritura Matriz y el Reglamento del Condominio. Por consiguiente, determinó que dichas guías eran exigibles a la parte querellante-recurrente, toda vez que esta las recibió, reconoció conocer su contenido y certificó que las remodelaciones propuestas cumplirían con los requisitos allí establecidos. En ese sentido, razonó que la aprobación inicial de las remodelaciones se fundamentó en la creencia de que las ventanas conservarían las características arquitectónicas originales del complejo. No obstante, concluyó que los cristales posteriormente instalados no cumplían con los parámetros de uniformidad

establecidos en las referidas guías, por lo que la Junta de Directores estaba facultada para requerir su sustitución.

Además, el DACO resolvió que la parte querellante-recurrente no podía cuestionar la validez ni la aplicabilidad de las referidas guías luego de haber solicitado la aprobación de las remodelaciones conforme a estas y de haberse comprometido expresamente a cumplirlas. A esos efectos, concluyó que resultaba de aplicación la doctrina de los actos propios. En consecuencia, declaró *No Ha Lugar* la *Querella* presentada por la parte querellante-recurrente.

Inconforme, y tras denegada una previa solicitud de reconsideración, Dorado LLC acudió ante nos mediante el recurso de epígrafe y esbozó los siguientes señalamientos de error:

> Erró el Departamento de Asuntos del Consumidor al dictar Resolución Sumaria desestimatoria sin considerar los asuntos de umbral, sobre la validez de la votación ya que se efectuó en violación a los Artículos 37 y 51 de la Ley de Condominios, así como de la propia convocatoria de la asamblea.
>
> Erró el Departamento de Asuntos del Consumidor al dictar Resolución Sumaria desestimatoria a pesar de que existían controversias sustanciales de hecho y al impedir de esta forma que la compareciente pudiera presentar prueba documental y testifical sobre sus alegaciones, por lo que la determinación no está basada en un expediente administrativo completo en violación al debido proceso de ley.
>
> Erró el Departamento de Asuntos del Consumidor al concluir que la compareciente ha incurrido en conducta contradictoria al impugnar el alcance de las Guías de Construcción, y al aplicar la doctrina de cosa juzgada a pesar de que el asunto de las tonalidades, tipo, marca o modelo de las ventanas no surgen con claridad de los documentos constitutivos del régimen, y no se ha cumplido con el articulo 13 de la Ley de Condominios asunto no contemplado en la determinación judicial del caso KLRA201800765.

Por su parte, el 2 de enero de 2025, la Junta de Directores presentó su *Alegato de la Parte Querellada-Recurrida*.

Así pues, perfeccionado el recurso y con el beneficio del expediente administrativa original elevado ante este Tribunal,

incluyendo la evidencia documental y fotográfica que forma parte del mismo, procedemos a exponer la normativa jurídica aplicable a las controversias ante nuestra consideración.

**-II-**

**A. Academicidad**

El principio de justiciabilidad establece que los tribunales podemos evaluar los méritos de los casos si existe una controversia real y genuina entre las partes. *Hernández, Santa v. Srio. de Hacienda*, 208 DPR 727, 738 (2022). En ese sentido, los tribunales estamos llamados a intervenir solo en casos justiciables. *Bhatia Gautier v. Gobernador*, 199 DPR 59, 68 (2017). Se considera que una controversia no es justiciable cuando:

> (1) se procura resolver una cuestión política; (2) una de las partes carece de legitimación activa; (3) *hechos posteriores al comienzo del pleito han tornado la controversia en académica*; (4) las partes están tratando de obtener una opinión consultiva, o (5) se intenta promover un pleito que no está maduro.
> *Super Asphalt v. AFI y otro*, 206 DPR 803, 815 (2021) (énfasis en el original).

Como se observa, la doctrina de academicidad es una de las instancias de las de justiciabilidad. *Íd.* Se considera que un caso es académico cuando se intenta obtener: (i) un fallo sobre una controversia disfrazada, que en realidad no existe, (ii) una determinación de un derecho antes de que éste haya sido reclamado o (iii) una sentencia sobre un asunto que, al dictarse, por alguna razón no podrá tener efectos prácticos sobre una controversia existente. *Íd.,* pág. 816. Igualmente, una controversia es académica cuando los cambios fácticos o judiciales acaecidos durante el trámite judicial tornan en ficticia su solución, es decir, la controversia deja de estar viva y presente. *Díaz Díaz v. Asoc. Res. Quintas San Luis*, 196 DPR 573, 578 (2016).

**B. Revisión administrativa**

La Ley Núm. 38-2017, según enmendada, conocida como "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico" (en adelante, "LPAU") dispone que las decisiones administrativas pueden ser revisadas por el Tribunal de Apelaciones. 3 LPRA sec. 9671. Como cuestión de derecho, la revisión judicial será sobre las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. 3 LPRA sec. 9676. El propósito de tal disposición consiste en delimitar la discreción de los foros administrativos para asegurar que estos ejerzan sus funciones razonablemente y conforme a la ley. *Hernández Feliciano v. Mun. Quebradillas,* 211 DPR 99, 113-114 (2023).

En cuanto a las determinaciones de hechos formuladas por las agencias administrativas, la LPAU establece que serán sostenidas si están basadas en evidencia sustancial contenida en el expediente administrativo. 3 LPRA sec. 9675. Entendiéndose que la evidencia sustancial "es aquella prueba relevante que 'una mente razonable podría aceptar como adecuada para sostener una conclusión'". *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581, 591 (2020) citando a *Rebollo v. Yiyi Motors*, 161 DPR 69, 77 (2004). Por consiguiente, existe una presunción de legalidad y corrección que reviste a las determinaciones de hechos elaboradas por las agencias administrativas, salvo la parte que las impugna no produzca evidencia suficiente para derrotarlas. *Hernández Feliciano v. Mun. Quebradillas*, supra, pág. 114; *OEG v. Martínez Giraud*, 210 DPR 79, 88-89 (2022); *Capó Cruz v. Jta. Planificación et al.*, supra, pág. 591; *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 128 (2019). En otras palabras, la parte que impugna las determinaciones de hechos de una agencia tiene que demostrar que el dictamen administrativo no está justificado por una evaluación justa del peso de la prueba que tuvo ante su consideración. *Rebollo v. Yiyi*

*Motors,* supra, pág. 77. De lo contrario, los tribunales apelativos deben conceder gran consideración y deferencia a las determinaciones de las agencias debido a su vasta experiencia y conocimiento especializado. *Hernández Feliciano v. Mun. Quebradillas,* supra, pág. 114.

De otro lado, la LPAU sostiene que las conclusiones de derecho realizadas por los foros administrativos serán revisables en todos sus aspectos. 3 LPRA sec. 9675. Esto es, el tribunal revisor no tiene que otorgarle deferencia a las conclusiones o interpretaciones de derecho formuladas por las agencias administrativas. *Vázquez et al. v. DACo,* 2025 TSPR 56, pág. 28; 216 DPR ___ (2025). Sobre esto, el tribunal revisor deberá ejercer un juicio independiente para determinar si la actuación de la agencia administrativa está dentro del marco de sus facultades estatutarias. *Íd.* Por ello, los tribunales tienen que armonizar, siempre que sea posible, todos los estatutos y reglamentos administrativos involucrados para la solución justa de la controversia, de modo que se obtenga un resultado sensato, lógico y razonable. *Moreno Lorenzo y otros v. Depto. Fam.*, 207 DPR 833, 843 (2021).

Además, el tribunal revisor no dará deferencia a los procedimientos administrativos si al examinar el dictamen recurrido determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley; (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales. *Hernández Feliciano v. Mun. Quebradillas,* supra, pág. 114. Así pues, la revisión administrativa está limitada a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la agencia o si esta actuó de forma arbitraria, caprichosa o ilegal. *Moreno Lorenzo y otros v. Depto. Fam.*, supra, 839.

En síntesis, la LPAU establece que el tribunal revisor se ceñirá a evaluar lo siguiente: (i) si el remedio concedido fue apropiado; (ii) si las determinaciones de hecho están sostenidas por evidencia sustancial que obre en el expediente administrativo; y (iii) si se sostienen las conclusiones de derecho realizadas por la agencia. 3 LPRA sec. 9675.

**C. Procedimiento Adjudicativo y Disposición Sumaria**

El proceso adjudicativo es aquel por el cual "se adjudican derechos u obligaciones de una o más personas específicas." *Mun. de San Juan v. Jta. Planificación,* 189 DPR 895, 906 (2013). En el caso de las agencias administrativas los procedimientos adjudicativos se caracterizan por ser de naturaleza cuasi judicial. *J. P. v. Frente Unido I,* 165 DPR 445, 461 (2005). Estos tipos de procesos son regulados por un cuerpo de reglas mínimas establecidas en la LPAU. 3 LPRA sec. 9641-9662; *SLG Saldaña-Saldaña v. Junta,* 201 DPR 615, 621 (2018).

La referida legislación permite a las agencias, al amparo de ciertos criterios, resolver una controversia sumariamente. *O.C.S v. Universal,* 187 DPR 164, 177-178 (2012). A tenor con lo anterior, la Sección 3.7(a) de la LPAU, 3 LPRA sec. 9647 dispone lo siguiente:

> (a) Si la agencia determina que es necesario celebrar una vista adjudicativa, podrá citar a todas las partes o sus representantes autorizados e interventores, ya sea por su propia iniciativa o a petición de una de las partes, a una conferencia con antelación a la vista, con el propósito de lograr un acuerdo definitivo o simplificar las cuestiones o la prueba a considerarse en la vista. Se podrán aceptar estipulaciones, siempre que la agencia determine que ello sirve a los mejores intereses públicos.
>
> (b) Si la agencia determina a solicitud de alguna de las partes y luego de analizar los documentos que acompañan la solicitud de orden o resolución sumaria y los documentos incluidos con la moción en oposición, así como aquéllos que obren en el expediente de la agencia, que no es necesario celebrar una vista adjudicativa, podrá dictar órdenes o resoluciones sumarias, ya sean de carácter final, o parcial resolviendo cualquier controversia entre las partes, que sean separable de las controversias, excepto en aquellos casos donde la ley orgánica de la agencia disponga lo contrario.
>
> La agencia no podrá dictar órdenes o resoluciones sumarias en los casos en que (1) existen hechos materiales o esenciales

controvertidos; (2) hay alegaciones afirmativas en la querella que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la petición una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derechos no procede.

A tenor con lo anterior, el Reglamento de Procedimientos Adjudicativos de DACO, Reglamento Núm. 8034 del 14 de junio de 2011, establece en la Regla 11.1 lo siguiente:

El Departamento ordenará el cumplimiento de lo que proceda conforme a Derecho sin la celebración de vista administrativa, cuando luego de las partes haber hecho sus planteamientos y de haber evaluado la evidencia, no surja una controversia real de hechos. En tal caso, si una de las partes solicita reconsideración, se citará a vista en reconsideración siempre que se establezca la existencia de una controversia real sobre hechos pertinentes.

La adjudicación sumaria persigue agilizar los procedimientos ante las agencias cuando no existen hechos esenciales controvertidos. *O.C.S v. Universal,* supra. Ello, dado que, "[n]ada impide que una agencia pueda adjudicar sin celebrar una vista evidenciaria cuando no exista controversia sobre los hechos y, además, toda la evidencia documental que surge del expediente señale claramente la corrección de la determinación de la agencia." *Íd.* "De este modo, se evita el tener que celebrar una audiencia evidenciaria que no aportaría ningún elemento meritorio al proceso analítico." *Íd,* citando a J. Echevarría Vargas, *Derecho administrativo puertorriqueño,* San Juan, Ed. Situm, 2012, pág. 231. Ahora bien, nuestro Tribunal Supremo ha expresado que "los procesos administrativos y las determinaciones de hechos de las agencias est[á]n cobijados por una presunción de regularidad y corrección", por lo que "la revisión judicial se limita a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la agencia o si esta actuó de manera arbitraria, caprichosa o ilegal". *Vélez v. A.R.Pe.,* 167 DPR 684, 693 (2006).

**-III-**

En su primer señalamiento de error, la parte recurrente sostiene que el DACO incidió al dictar la *Resolución Sumaria* sin

atender, como asunto de umbral, la validez de la votación efectuada en la Asamblea Extraordinaria celebrada el 15 de enero de 2022. En particular, plantea que la referida asamblea se celebró en contravención a la Ley de Condominios, *supra*. Por su parte, la parte recurrida sostiene que cualquier planteamiento dirigido a impugnar la Asamblea Extraordinaria resulta inconsecuente para la disposición del caso. A esos efectos, argumenta que el Consejo de Titulares atendió nuevamente la controversia relacionada con los cristales instalados en las unidades de Dorado LLC en la Asamblea Anual Ordinaria celebrada el 4 de mayo de 2022, en la cual ratificó la determinación previa y aprobó las medidas correctivas correspondientes.

Según esbozado previamente, la doctrina de academicidad constituye una de las manifestaciones del principio de justiciabilidad. En virtud de esta, los tribunales debemos abstenernos de adjudicar controversias que, por razón de cambios fácticos o judiciales ocurridos durante el trámite del caso, han dejado de estar vivas y presentes. Una controversia adviene académica cuando la sentencia que se emita no tendrá efectos prácticos sobre la relación jurídica existente entre las partes, o cuando eventos posteriores al inicio del pleito tornan innecesaria su adjudicación. *Díaz Díaz v. Asoc. Res. Quintas San Luis*, supra, pág. 578.

Aplicado lo anterior al caso de autos, concluimos que no procede entrar a dirimir la validez de la Asamblea Extraordinaria celebrada el 15 de enero de 2022. Aun si asumiéramos, sin resolverlo, que la referida asamblea adoleció de las deficiencias señaladas por la parte querellante-recurrente, lo cierto es que, con posterioridad, el Consejo de Titulares celebró la Asamblea Anual Ordinaria del 4 de mayo de 2022, en la cual volvió a considerar la

controversia relacionada con los cristales instalados en las unidades de Dorado LLC. En dicha ocasión, el Consejo de Titulares reafirmó su determinación de que los referidos cristales alteraban la fachada del Condominio y aprobó, mediante voto mayoritario —con el único voto en contra del propio representante de la parte querellante-recurrente— requerirle evidencia de una orden de compra para sustituirlos por cristales que cumplieran con los parámetros establecidos en las Guías de Construcción y Remodelación.

En consecuencia, cualquier controversia dirigida exclusivamente a cuestionar la validez de la Asamblea Extraordinaria advino académica, toda vez que una determinación sobre ese asunto no tendría efecto práctico alguno sobre la relación jurídica entre las partes. Por consiguiente, no se cometió el primer señalamiento de error.

Ahora bien, en su segundo y tercer señalamiento de error, la parte recurrente sostiene que el DACO incidió al disponer sumariamente de la controversia a pesar de existir controversias sustanciales de hecho que requerían la celebración de una vista evidenciaria. A su vez, argumenta que erró al concluir que estaba impedida de cuestionar el alcance de las Guías de Construcción y Remodelación y al determinar que estas le eran exigibles. En particular, plantea que los documentos rectores del régimen no establecen con claridad la tonalidad, tipo, marca o modelo del cristal que debía instalarse en las ventanas objeto de controversia.

Por su parte, la parte recurrida sostiene que no existían controversias materiales de hecho que impidieran la disposición sumaria del caso. Argumenta que la parte querellante-recurrente recibió las Guías de Construcción y Remodelación, reconoció conocer su contenido y se comprometió expresamente a cumplirlas como parte del proceso de aprobación de las remodelaciones

realizadas en sus unidades. Añade que el Consejo de Titulares y la Junta de Directores estaban facultados para exigir uniformidad en la fachada del Condominio.

Según esbozado previamente, la adjudicación sumaria constituye un mecanismo procesal que permite a una agencia administrativa resolver una controversia sin la celebración de una vista evidenciaria. Ello procede cuando del expediente surge con claridad que no existe controversia real sobre hechos materiales o esenciales. La Sección 3.7(b) de la LPAU, 3 LPRA sec. 9647, autoriza a las agencias a dictar órdenes o resoluciones sumarias luego de analizar los documentos que acompañan la solicitud y los que obran en el expediente. Sin embargo, dicho mecanismo no podrá emplearse cuando existan hechos materiales controvertidos, cuando haya alegaciones afirmativas no refutadas, cuando surja del propio expediente una controversia real sobre un hecho esencial, o cuando no proceda como cuestión de derecho. En armonía con lo anterior, la Regla 11 del Reglamento Núm. 8034, permite resolver sumariamente toda controversia en la que, luego de evaluar los planteamientos de las partes y la evidencia disponible, no surja controversia real de hechos. El propósito de este mecanismo es agilizar los procesos administrativos, pues "[n]ada impide que una agencia pueda adjudicar sin celebrar una vista evidenciaria cuando no exista controversia sobre los hechos y, además, toda la evidencia documental que surge del expediente señale claramente la corrección de la determinación de la agencia." *O.C.S v. Universal*, supra, pág. 178.

Así pues, al ejercer nuestra función revisora, corresponde conceder deferencia a las determinaciones de hecho formuladas por los organismos administrativos cuando estas encuentran apoyo en evidencia sustancial obrante en el expediente. La LPAU define la

evidencia sustancial como aquella prueba relevante que "una mente razonable podría aceptar como adecuada para sostener una conclusión." *Capó Cruz v. Jta. Planificación et al.*, supra, pág. 591. Sobre las referidas determinaciones de hecho, existe, además, una presunción de legalidad y corrección que los tribunales debemos respetar mientras la parte que las impugna no presente la evidencia suficiente para derrotarlas. *Hernández Feliciano v. Mun. Quebradillas*, supra, pág. 114. Ahora bien, la deferencia a la determinación de una agencia administrativa no es absoluta, esta cederá cuando la decisión no esté basada en evidencia sustancial, cuando la agencia haya errado en la aplicación y/o interpretación de la ley, cuando haya actuado de manera irrazonable, arbitraria o ilegal, o cuando su actuación lesione derechos constitucionales fundamentales. *Hernández Feliciano v. Mun. Quebradillas*, supra, pág. 114. En cambio, tratándose de conclusiones de derecho, el tribunal no está obligado a deferir a la interpretación de la agencia y estas serán revisables en todos sus aspectos.

Examinado el expediente administrativo a la luz de la normativa antes expuesta, concluimos que el DACO no incidió al determinar que la parte querellante-recurrente quedó obligada por las Guías de Construcción y Remodelación ni al establecer que la parte querellada-recurrida está facultada para exigir uniformidad en la fachada del Condominio. Sin embargo, erró al disponer sumariamente la totalidad de la controversia, pues del propio expediente surge que un hecho material esencial permanece sin resolver. Nos explicamos.

En cuanto a la obligatoriedad de las Guías de Construcción y Remodelación, el expediente refleja que el 16 de abril de 2020, la parte querellante-recurrente recibió copia de las referidas guías, que su arquitecto sometió una propuesta en la que expresamente se

comprometió a cumplirlas y a preservar las características arquitectónicas originales del complejo, y que su representante certificó haberse familiarizado con los requisitos de diseño aplicables al proyecto.[10] Fue precisamente sobre la base de esas aseveraciones que el Comité de Arquitectura y la Junta de Directores aprobaron las remodelaciones propuestas.[11] En consecuencia, la parte recurrente no puede pretender ahora, impugnar la validez ni la aplicabilidad de las referidas guías luego de haber obtenido la aprobación de sus remodelaciones al amparo de estas. El DACO actuó correctamente al aplicar la doctrina de los actos propios y al concluir que las Guías de Construcción y Remodelación le eran exigibles.

No obstante, el análisis no concluye ahí. Si bien lo anterior no admite controversia y encuentra respaldo en los documentos que tuvimos a nuestro haber revisar, del expediente no surge con el grado de certeza necesario cuál es el cristal específico que debía instalar la parte recurrente. Las Guías de Construcción y Remodelación exigen que cualquier sustitución de ventanas mantenga la transparencia y el color del cristal "original", pero no precisan el tipo, modelo, tonalidad ni especificación técnica que debía servir de parámetro para evaluar el cumplimiento. Es decir, las propias Guías de Construcción y Remodelación remiten a un estándar —el cristal "original"— sin identificar con precisión cuál era ese cristal en términos concretos y verificables. Por su parte, la Escritura Matriz se limita a prohibir que se realicen alteraciones a los elementos comunes sin el consentimiento escrito de la Junta de Directores, sin hacer referencia alguna a las especificaciones del cristal. En consecuencia, ninguno de los documentos rectores del régimen que obran en el expediente establece con suficiente claridad

---

[10] Apéndice de la parte recurrente, pág. 96.
[11] *Íd.*, pág. 20.123.

el parámetro específico que debía cumplir el cristal a instalarse. Es menester señalar que, aun cuando examinamos el expediente administrativo original elevado ante nuestra consideración, incluyendo la evidencia fotográfica que obra en autos, esta no permite identificar con precisión el cristal original al que hacen referencia las Guías de Construcción y Remodelación ni determinar si los cristales instalados por la parte recurrente se apartan de dicho parámetro. Esta ausencia de certeza sobre un hecho esencial impide la disposición sumaria total de la controversia, pues sobre ese punto subsiste una controversia material de hecho que requiere la presentación y valoración de prueba.

En virtud de lo anterior, concluimos que el DACO no incidió al determinar que las Guías de Construcción y Remodelación son exigibles a la parte querellante-recurrente, que esta no puede impugnar su validez ni aplicabilidad luego de haberse sometido a ellas, y que la parte querellada-recurrida estaba facultada para exigir uniformidad en la fachada del Condominio. Sin embargo, erró al disponer sumariamente de la controversia relacionada con el cristal específico que debía instalarse, toda vez que del expediente no surge con suficiente certeza cuál era el cristal original contemplado por las Guías de Construcción y Remodelación ni si el cristal instalado por la parte querellante-recurrente cumple con dicho estándar. Sobre ese asunto subsiste una controversia material de hecho que requería la celebración de una vista evidenciaria.

**-IV-**

Por los fundamentos previamente expuestos, se **modifica** la *Resolución Sumaria* recurrida. Se confirma en cuanto a la conclusión de que las Guías de Construcción y Remodelación son exigibles a la parte querellante-recurrente, que esta no puede impugnar su validez ni aplicabilidad luego de haberse sometido a

ellas, y que la parte querellada-recurrida estaba facultada para exigir uniformidad en la fachada del Condominio.

No obstante, se **revoca** en cuanto dispuso sumariamente de la controversia relacionada con el cristal que debía instalar la parte querellante-recurrente. En consecuencia, **se devuelve** el caso de epígrafe al DACO para que determine cuál es el cristal original contemplado por las Guías de Construcción y Remodelación y si el cristal instalado por la parte querellante-recurrente cumple con dicho estándar. Se ordena la continuación de los procedimientos conforme a lo aquí dispuesto.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones